UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MIGUEL BARNES** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-2726** |
| **RIVER BIRCH, INC.** | **SECTION: "S" (3)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that River Birch, Inc.'s Motion for Summary Judgment (Doc. #24) is **GRANTED**, and plaintiff's complaints are **DISMISSED WITH PREJUDICE**.

## BACKGROUND

On March 10, 2008, defendant, River Birch, Inc., a company which operates a landfill, hired plaintiff, Miguel Barnes, an African American, as a geoprobe technician at an hourly wage of $17.00. As a geoprobe technician, Barnes operated a machine to obtain soil samples throughout the landfill. When the project was completed, Barnes was transferred to the position of general laborer. His wages remained $17.00 per hour. Thereafter, Barnes was transferred at the same wage to the position of flare technician, working on the system that flared off gas produced by the decomposing materials.

On October 2, 2008, Barnes witnessed Brandon Gros, a white River Birch employee, wearing an Afro wig and saying that he was going to get his hair braided. Barnes, Frank Turner, Desmond Washington and Chris Young, the other African American River Birch employees who witnessed the incident, complained to a supervisor, Chad Soileau. Thereafter, Hollie Guillie, the

Assistant Safety Coordinator, and Tom Nicholson, the General Manager, interviewed the employees involved. After the investigation, Nicholson terminated Gros. Also, during the investigation, Barnes informed Nicholson and Guillie that there was a piece of refuse in the landfill with "KKK" painted on it in yellow. Nicholson ordered another employee to remove the refuse.

In summer of 2009, River Birch entered into a contract with an outside company to opearte the flare system. Instead of terminating Barnes and Turner at that time, River Birch transferred them to the positions of deep well technicians

At the time of Barnes' and Turner's transfer to the deep well, Arthur Ganious, an African American, was the deep well supervisor. The other two deep well technicians, Anthony Bray and Joel Johnson, were also African Americans. Barnes' pay remained $17.00 per hour, which was a higher hourly rate than the other two deep well technicians. Turner resigned shortly after the transfer, and was not replaced.

Mark Taylor, a white contractor, oversaw the operations of and obtained the permit for River Birch's deep well. Barnes alleges that in September 2009, during a break, he entered the deep well trailer where Taylor and Ganious were having a conversation. Barnes claims that Taylor turned to him and called him a "hedonistic monkey." Barnes alleges that he reported the incident to "upper management," and that, as a result of his complaint, he was terminated on October 28, 2009. Barnes filed this suit against River Birch alleging that he was discriminated against due to his race and in retaliation for his complaints of race discrimination in violation of 42 U.S.C. § 1981.

River Birch filed this motion for summary judgment, arguing that Barnes cannot maintain a case for either race discrimination or retaliation. River Birch contends that in October 2009,

Nicholson was exploring ways to cut costs because business was slow at the deep well. The deep well permit required that "two qualified persons" be on site when trucks were offloading liquid waste. River Birch originally interpreted this to mean two employees, but discovered that the "two qualified individuals" could be one River Birch employee and the delivery truck driver. The revised interpretation permitted River Birch to reduce the deep well technician staff. River Birch argues that Nicholson chose to terminate Barnes because he was the highest paid deep well technician, and he had the least amount of experience working at the deep well, and that his termination had nothing to do with his race or his reporting of the incidents of alleged racial harassment.

## ANALYSIS

**A.     Summary Judgment Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case.

Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991). In analyzing a motion for summary judgment in a race discrimination and retaliation case brought pursuant to § 1981, the court applies the summary judgment standard to the framework discussed in the next section.

**B.     Race Discrimination and Retaliation Under 42 U.S.C. § 1981**

Barnes claims that River Birch discriminated against him because of his race, and retaliated against him for his prior complaints of racial harassment in violation of 42 U.S.C. § 1981.

Pursuant to 42 U.S.C. § 1981, all persons within the jurisdiction of the United States have the same rights, regardless of race, to enter into and enforce contracts, including the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b). Section 1981 claims are analyzed under the same methodology as Title VII claims. Jenkins v. Methodist Hosp. of Dallas, Inc., 478 F.3d 255, 260 (5th Cir. 2007); see also Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 992 (5th Cir. 2005) ([T]the only substantive differences between the two statutes [is] their respective statute of limitations and the requirement under Title VII that the employee exhaust administrative remedies.").

A plaintiff bringing claims under Title VII or § 1981 can use either direct or circumstantial evidence to prove his case of intentional discrimination. Portis v. First Nat'l Bank of New Albany, Miss., 34 F.3d 325, 328 (5th Cir. 1994). Direct evidence is "evidence which, if believed proves the fact of discriminatory animus without inference or presumption." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002). "Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817

(1973)." Id. However, "the McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination." Id. (quoting Trans World Airlines, Inc. v. Thurston, 105 S.Ct. 613, 621-22 (1984)).

Barnes has not submitted any facts that provide direct evidence of River Birch's alleged race discrimination or retaliation. Instead, he alleges that River Birch's changed interpretation of the deep well permit was a pretext, and that he was actually terminated due to race discrimination and in retaliation for prior complaints of racial harassment. Because this is a circumstantial evidence "pretext" case, the McDonnell Douglas test applies. See Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005).

In McDonnell Douglas Corp., the Supreme Court of the United States "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." St. Mary's Honor Ctr. v. Hicks, 113, S.Ct. 2742, 2742 (1993). Under this evidentiary framework, the plaintiff must first establish a *prima facie* case of discrimination. Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2106 (2000). If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for the conduct. See Reeves, 120 S.Ct. at 2106. This burden is one of production, not persuasion and involves no credibility assessment. Id. If the defendant meets the burden, the presumption raised by the plaintiff's *prima facie* case disappears. Id.

Once the employer produces sufficient evidence to support a nondiscriminatory explanation, the plaintiff is given an "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

Id. (internal quotation and citation omitted). The plaintiff must then demonstrate that the adverse employment action would not have occurred "but for" plaintiff's protected activity. Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005).

### 1. Race Discrimination

To establish a *prima facie* case of race discrimination in a reduction-in-force case, the plaintiff must prove that: (1) he was a member of a protected group; (2) he was adversely affected by the employer's decision; (3) he was qualified to assume another position at the time of discharge; and (4) there is sufficient evidence, either circumstantial or direct, from which a trier of fact may reasonably conclude that the employer intended to discriminate in reaching the adverse employment action, or others who were not members of the protected class remained in similar positions. Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 41 (5th Cir. 1996) (citing Amburgery v. Cohart Refractories Corp., Inc., 936 F.2d 805, 812 (5th Cir. 1991)).

Barnes, an African America, was a member of a protected class, and he was terminated, which is an adverse employment action. See McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007) ("Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."). Further, he was qualified for other positions at River Birch, as evidenced by the fact that he held four different positions at River Birch, namely geoprobe technician, general laborer, flare technician, and deep well technician.

However, Barnes cannot establish a *prima facie* case of race discrimination because there is no evidence from which the trier of fact may reasonably conclude that the employer intended to discriminate on the basis of Barnes' race in reaching the decision to terminate him. Nicholson

testified that in October 2009, he was searching for a way to cut costs in the deep well operation because that business was slow. He testified that when he discovered that a staff reduction was possible at the deep well, he choose to terminated Barnes because Barnes was the highest paid deep well technician and he had the least amount of experience in that position. Further, race was neutral in the decision to terminate Barnes over the other deep well technicians because all of the deep well technicians were African American. Therefore, River Birch's motion for summary judgment is GRANTED as to Barnes' claim of racial discrimination, and Barnes' racial discrimination claim under § 1981 is DISMISSED WITH PREJUDICE.

### 2.  Retaliation

#### a. Barnes' *Prima Facie* Case

To establish a *prima facie* case of retaliation, the plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484 (5th Cir. 2008). A plaintiff who is unable to show a *prima facie* case cannot survive a summary judgment challenge. Byers v. Dallas Morning News, Inc., 209 F.3d 419, 429 (5th Cir. 2000).

#### i.  Protected Activity

An employee engages in a protected activity if he opposes any unlawful employment practice, or makes a charge, testifies, assists, or participates in any manner in an investigation , proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). "Complaining to supervisors about racial harassment is a protected activity." Carrera v. Commercial Coating Servs. Int'l, Ltd., 2011

WL 1439918, *4 (5th Cir. 4/14/2011) (citing Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427-28 (5th Cir. 2000)).

Barnes complained to supervisors about racial harassment with regards to Gros' conduct with the wig, the refuse with "KKK" written on it, and Taylor's comment. Thus, he engaged in a protected activity.

### ii. Adverse employment action

For an "adverse employment action" to be actionable under Title VII's retaliation provision, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006).

Barnes has satisfied the second prong for establishing a *prima facie* case for retaliation, in that he alleges that he was terminated in retaliation for complaining about racial harassment.

### iii. Causal Link

To establish the causal link element of a *prima facie* case of a retaliation claim, the plaintiff need not meet the "but for" standard. Stroud v. BMC Sorftware, Inc., 2008 WL 2325639 (5th Cir. 6/6/2008). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." Cooper v. United Parcel Serv., Inc., 368 Fed. Appx. 469 (5th Cir. 2010) (quoting McCoy, 492 F.3d at 562). However, "temporal proximity can only establish a causal link when it is connected to the decision maker's knowledge of the protected activity." Thompson v. Sumervell Cnty., Tx., 2011 WL

8

262357 (5th Cir. 7/1/2011) (citing Clark Cnty. Sch. Dist. v. Breeden, 121 S.Ct. 1508, 1511 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be very close.") (internal quotations and citation omitted).

Barnes complained to Nicholson about Gros' behavior with the wig and the refuse with "KKK" written on it in October 2008. He was terminated a year later in October 2009. Also, Gros was immediately fired for the wig incident, and River Birch transferred Barnes twice after the wig incident to avoid laying him off. Because Barnes' October 2008 complaints of racial harassment are remote in time from his termination, they do not provide the causal link to establish a *prima facie* case of retaliation for reporting incidents of racial harassment.

Barnes alleged in his First Supplemental and Amending Complaint that he complained to "upper management" about Taylor's September 2009 harassing comment. In his deposition, Barnes testified that after the incident, he and Ganious, his supervisor who also heard Taylor's comment, discussed the incident. Barnes testified that Ganious agreed that the comment was offensive, and that he asked Ganious if he should report the incident. Barnes testified that Ganious told him to think about it, and that ultimately, he did not report Taylor's comment to anyone. Nicholson testified at his deposition that he was not aware of Taylor's comment until August 2010, when Barnes filed his complaint. Further, in an affidavit dated September 22, 2010, Ganious declared that Barnes did not complain about Taylor's comment to him, and that he did not report any such incident to Nicholson. However, Ganious declared in his July 8, 2011 affidavit, that he was forced

9

to sign the September 22, 2010, affidavit, and that its contents are not accurate. He declared that he discussed Taylor's comment with Barnes, and that he reported it to Nicholson shortly before Barnes was terminated. Because Nicholson, the decision maker, was aware of Barnes' alleged complaint about racial harassment prior to Barnes' termination, Barnes has established a *prima facie* case for retaliation.

### b. River Birch's Non-Discriminatory Justification

Barnes has established a *prima facie* case of retaliation by proving that Nicholson was aware of his complaint about Taylor's alleged racial harassment. River Birch has the burden of production to articulate a legitimate, nondiscriminatory reason for Barnes' termination. See Reeves, 120 S.Ct. at 2106.

At his deposition, Nicholson testified that Barnes was terminated to save costs. Nicholson testified that he was searching for a way to cut costs in the deep well operation because that business was slow. He was informed that the deep well permit did not require two River Birch deep well employees to be on site during offloading operations, but that the delivery truck driver could count as one of two require qualified personnel. Nicholson testified that Barnes was the highest paid deep well technician, and the last person transferred into that group, and therefore, he was the first to be terminated. He also testified that Barnes was not replaced, and that the deep well operated with three technicians for more than a year until business improved. Further, Barnes confirmed at his deposition that he was the highest paid deep well technician and the last person transferred into that group.

River Birch has met its burden of production to articulate a nondiscriminatory justification for the termination through the testimony of Nicholson and Barnes.

**c.     Pretext**

Because River Birch produced a nondiscriminatory justification for Barnes' termination, Barnes' *prima facie* case disappears. Id. To survive summary judgment, Barnes must demonstrate by a preponderance of the evidence that River Birch's stated reasons for his termination were not its true reasons, but rather were pretext for retaliation. Id. Barnes must demonstrate that he would not have been terminated "but for" his complaint about Taylor's racial harassment. Septimus, 399 F.3d at 608.

Barnes argues that River Birch's stated reasons for his termination, that he was the highest paid deep well technician with the least amount of experience, were a pretext for retaliation because the decision to reduce the deep well technician staff was made by Taylor. Barnes contends that Taylor informed Nicholson that the deep well permit could be interpreted differently to permit a workforce reduction. Barnes also argues that Taylor influenced Nicholson's decision to choose Barnes as the employee to terminate by telling Nicholson that he did not feel comfortable with Barnes working the deep well alone.

Nicholson testified at his deposition that he was searching for a way to cut costs in the deep well operation because that business was slow. He also testified that Taylor realized that the permit could be interpreted to permit a workforce reduction. Nicholson testified that he chose to terminate Barnes because he was the highest paid deep well technician and had the least amount of experience

in that position. Nicholson also testified that Barnes was not replaced and the deep well operated with a reduced number of technicians until business improved more than a year later.

Barnes has not demonstrated that he would not have been terminated "but for" his complaint about Taylor's racial harassment. Barnes has not refuted Nicholson's testimony regarding the need to cut costs in an underperforming division of River Birch's business, and that Barnes was the logical choice for termination based on his elevated wages and relative lack of experience. Therefore, River Birch's motion for summary judgment is GRANTED as to Barnes' retaliation claim, and Barnes' retaliation claim under § 1981 is DISMISSED WITH PREJUDICE.

## CONCLUSION

**IT IS HEREBY ORDERED** that River Birch, Inc.'s Motion for Summary Judgment (Doc. #24) is **GRANTED**, and plaintiff's complaints are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this   11th   day of August, 2011.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**